951 F.2d 348
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Shirley DAMROW, William R. Damrow, Plaintiffs-Appellants,
v.
HOLBROOK-PATTERSON, INC., Defendant-Appellee.
 No. 90-2342.
 United States Court of Appeals, Sixth Circuit.
 Dec. 23, 1991.
 
 Before RALPH B. GUY, Jr. and RYAN, Circuit Judges; and HULL,[1] District Judge.
 PER CURIAM.
 
 
 1
 This matter was appealed after the district court granted summary judgment to defendant Holbrook-Patterson, Inc. ("Holbrook") on plaintiffs' sexual harrassment and negligence claims. The plaintiffs, Shirley and William R. Damrow, originally alleged causes of action under Title VII of the Civil Rights Act of 1964, and under Michigan's Elliott-Larsen Civil Rights Act, M.C.L. 37 2101, et seq.; M.S.A. 3.548(101), et seq., for sexual harassment, and for negligence in hiring, training, and supervising employees.
 
 
 2
 The plaintiffs contend that summary judgment was inappropriate in this case because they presented sufficient facts to establish a cause of action based upon constructive discharge due to hostile environment sexual harassment, and negligence in regard to the defendant's supervision of Howard Sharpley. Mr. Sharpley was Shirley Damrow's immediate supervisor, as well as marketing manager and senior vice president of Holbrook. He and Mrs. Damrow frequently attended various trade shows together which, on occasion, necessitated an overnight stay in a motel or hotel.
 
 
 3
 The undisputed proof was that the only direct sexual advances by Howard Sharpley upon Mrs. Damrow occurred in November of 1987. However, Mrs. Damrow contends that her rejection of these advances prompted Sharpley to engage in a course of conduct which involved unwarranted criticism of her work as well as ridiculing her in a manner which obviously had a sexual connotation to it.
 
 
 4
 The elements of hostile work environment sexual harassment are well summarized in Yates v. Avco Corp., 819 F.2d 630 (6th Cir.1987), as follows:
 
 
 5
 (1) as women they were members of a protected class; (2) they were subject to unwelcome sexual harassment, as it was not solicited and not desired; (3) the harassment was based on sex because there was no evidence that men were subjected to similar harassment; (4) because the harassment was sufficiently persistent and severe to affect the psychological well-being of the plaintiffs it affected a "term, condition, or privilege of employment;" and (5) a sufficient respondeat superior relationship existed to hold Avco liable for Sanders's actions.
 
 
 6
 The potential impact of a sexual harassment hostile environment is clearly described in Meritor Savings Bank v. Vinson, 477 U.S. 57, 67 (1986), citing Henson v. Dundee, 682, F.2d 897, 902 (11th Cir.1982):
 
 
 7
 Sexual harassment which creates a hostile or offensive environment for members of one sex is every bit the arbitrary barrier to sexual equality at the workplace that racial harassment is to racial equality. Surely, a requirement that a man or woman run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living can be as demeaning and disconcerting as the harshest of racial epithets.
 
 
 8
 Under both the plaintiffs' sexual harassment and negligence theories, if the plaintiffs establish that Holbrook knew or should have known of Sharpley's conduct, liability would attach to the defendant company. In Yates, the Court explains the applicability of Vinson, and concludes that notice is not an absolute requirement to hold employers liable when supervisors are involved, but that constructive notice will suffice. Applying the "agency factors" required by Vinson, the Court in Yates, supra, at 636 explains:
 
 
 9
 The essential question in applying agency principles is whether the act complained of took place in the scope of the agent's employment. This determination requires an examination of such factors as when the act took place, where it took place, and whether it was foreseeable.
 
 
 10
 Likewise, in regard to plaintiffs' common-law claim of negligent supervision, Michigan case law also indicates an employer may be held liable for the intentional acts of an employee outside the scope of his employment if the employer knew or had reason to know of the employee's dangerous propensities. Hersh v. Kentfield Builders, Inc., 385 Mich. 410, 412 (1971), Bradley v. Stevens, 329 Mich. 556, 562-563 (1951).
 
 
 11
 Defendant contends that the plaintiffs offered no evidence of the two essential elements of a sexual harassment claim:
 
 
 12
 1. That the harassment was severe and pervasive, and
 
 
 13
 2. That the plaintiff suffered adverse psychological effects as a result of the harassment.
 
 
 14
 The district court found Mrs. Damrow's sexual harrassment claim could not survive defendant's motion for summary judgment, because "her allegations do not rise to the required level of severity and pervasiveness to establish a hostile work environment caused by sexual harassment." The court also dismissed plaintiffs' negligence claims finding that the plaintiffs' had no evidence to support a finding that Holbrook knew or had reason to know of Sharpley's conduct.
 
 
 15
 In support of their sexual harassment and negligence claims, the plaintiffs filed various affidavits and depositions which indicate that Mrs. Damrow was the subject of repeated sexual slurs made by Mr. Sharpley after she refused his sexual advances in November of 1987. In front of her co-workers, Mr. Sharpley would refer to Mrs. Damrow by the use of such derogatory terms as "the dumb bitch," "the blond bimbo," "the dumb blonde," and "the pillow princess." He also allegedly spread rumors that Mrs. Damrow was "sleeping with customers and suppliers," as he systematically removed her job duties and responsibilities from her.
 
 
 16
 During the course of this conduct, Mrs. Damrow complained of Mr. Sharpley's treatment of her to Chris Galloway, the Personnel Administrator of Holbrook, who described Mrs. Damrow as being "very, very frustrated." During her discovery deposition, Mrs. Damrow also answered in the affirmative when she was asked if she had suffered extreme mental anguish and emotional anguish as a result of her experiences with Mr. Sharpley.
 
 
 17
 Based upon the affidavits and depositions filed by the plaintiffs, and by construing this evidence in a light most favorable to the plaintiffs, it is reasonable to infer that the plaintiff was exposed to an intimidating, hostile, or offensive working environment that seriously affected her psychological well-being. In view of Mrs. Damrow's complaints during the course of this conduct to the Personnel Administrator of Holbrook, it is also reasonable to infer by Mr. Sharpley's derogatory course of conduct in front of Mrs. Damrow's co-workers that defendant Holbrook knew, or had reason to know of, Mr. Sharpley's behavior. Therefore, summary judgment was not appropriate in regard to plaintiffs' sexual harrassment or negligence claims. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 
 18
 Accordingly, the summary judgment of the district court in regard to plaintiffs' negligence and sexual harrassment claims is REVERSED and REMANDED for trial.
 
 
 
 [1]
 The Honorable Thomas G. Hull, Chief Judge, United States District Court for the Eastern District of Tennessee, sitting by designation